Wright, J.,
delivered the opinion of the Court.
■1. The Chancellor decreed that the children, or increase of the female slaves of the testator, born after the execution of •his will, and before his death, did not go to the respective legatees, or donees of the mothers, under the will. In this opinion we concur. As the will did not begin to operate until the death of the testator, no right to the female slaves, the mothers, vested in the legatees till that time ; they remained the property of the testator, who was entitled to all the profits arising from them; and, consequently, their children, the ne-groes in question, were the property of the testator at his death. They are not enumerated, or in any way referred to in the will. Jones v. Jones et al., Con. R., 310; Cole et al. v. Cole, 1 Ird., 460; 2 Ird. Eq. R., 245, 538; 3 Ird. Eq. R., 581.
This question must be settled by the true import of the will itself; extrinsic evidence, as to the meaning of the language • employed by the testator, being inadmissible.
2. The Chancellor also held, that as to these slaves, so born between the execution of the will and the testator’s death, they did not pass under the residuary clause of the will; but as to them he died intestate, and that they were distributable amongst his next of kin. In this opinion we also concur. *351 The residuary clause is as follows: “ All the remainder of property, consisting of money, notes, accounts, stock of every kind, crop on Hand, or growing, farming utensils of every kind, after satisfying the demands hereinbefore provided, I will and bequeath to my aforesaid nephews, Mitchell Perry and James T. High, to be equally divided between them.” The demands hereinbefore provided for, as used in the above clause, refer to the testator’s debts, funeral expenses, and the cost of administering his estate, for the payment of which he had made provision, in the first clause of his will, out of the very things enumerated in the residuary clause. Now it is obvious, that this residuary clause does not refer to, or carry the slaves of the testator in any way. As authorities decisive of the question, we need only cite Clark v. Hyman et al., 1 Dev., 382; Frazer v. Alexander et al., 2 Dev. Eq. R., 348; Simms et al. v. Garrett et al., 1 Dev. & Batt. Eq. R., 393. There is nothing in Jarnagin v. Conway, 2 Hum., 50-53, against this. It is true, the words, “ all the remainder of property,” unless qualified by something else, would carry every thing not previously disposed of. But here, after these general words, the testator gives a precise description of the specific things given, and of all of- them, to-wit, consisting of money, notes, accounts, stock of every kind, crop on hand, or growing, and farming utensils of every kind. This enumeration qualifies the force of the general words, and restricts the residuary clause to the very things specified.
3. So, in like manner, the testator died intestate as to the slaves Giles and Mary, and stock in the Carthage and Harts-ville Turnpike Company, acquired by him after the making of his will, the same not being embraced by the residuary clause thereof. And so, also, in regard to the watch and gun; they are undisposed of in the will, and the Chancellor decreed properly as to all of them. Davie et al. v. King et al., 2 Ird. Eq. R., 203.
4. The decree should be so drawn as to require such of the next of kin of the testator as may wish to come into his un-disposed of estate, to account for any advancements made *352 them, bj him, either in bis lifetime, or by bis will. The decree is silent as to this, and we take it for granted the Chancellor meant to have the intestate property so distributed.
The decree of the Chancellor, with this modification, is affirmed.